UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| ROBERT IRWIN GWIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| VS. | ) | No. 19-1112-JDT-cgc |
| NED RAY MCWHERTER, ET AL., | ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On January 20, 2017, Plaintiff Robert Irwin Gwin filed a *pro se* complaint under 42 U.S.C. § 1983 against several Defendants, which was docketed as case number 17-2054-JDT-cgc. The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On June 4, 2019, the Court entered an order severing Gwin's claims against former Tennessee Governor Ned Ray McWherter and the Tennessee Board of Parole (TBOP), directing the Clerk to open those claims in a new civil case, and dismissing Gwin's remaining claims. (ECF No. 5.) Gwin's amended complaint[1] containing his allegations against McWherter and the Board of Parole was opened as a new civil case, number 19-1112-JDT-cgc, (ECF No. 1) and is now before the Court for screening.

Gwin alleges that he was convicted of murder during a robbery in 1973 and sentenced to a 100-year term of imprisonment. (ECF No. 1 at PageID 3.) On January 17, 1979, former Tennessee

---

[1] Gwin filed his amended complaint on March 20, 2017.

Governor Ray Blanton commuted Gwin's sentence to time served, and Gwin was released from prison. (*Id.*; ECF No. 1-1 at PageID 16.) Almost sixteen years later, on December 20, 1994, then-Governor McWherter revoked the commutation, reinstated Gwin's original sentence, and denied Gwin credit for his years of release. (ECF No. 1 at PageID 3-4.) Gwin was paroled in April 2013 but rearrested for a parole violation on October 10, 2016. (*Id.* at PageID 4.)

Gwin asserts that McWherter acted unconstitutionally when in 1994 he revoked the commutation of Gwin's 1973 sentence without a probable-cause hearing, denying him credit for the fifteen years he had been released. (*Id.*) Gwin contends the TBOP fraudulently asserted at that time that he was on parole when his sentence actually had been commuted. (*Id.* at PageID 7.) He alleges that the TBOP falsified government records to show he was paroled on January 17, 1979. (*Id.*)

Gwin further contends that when he was rearrested for a parole violation in October 2016, he was constitutionally entitled to a parole-revocation hearing that complied with the protections afforded parolees in 1972, the year of his offense. (*Id.* at PageID 7-8.) Gwin sues under the Sixth, Eighth, and Fourteenth Amendments and the *Ex Post Facto* clause of Article I of the Constitution. (*Id.* at PageID 11, 13-15.)

Gwin sues both the TBOP and McWherter in their official capacities only. (*Id.* at PageID 1.) He seeks declaratory relief and compensatory and punitive damages. (*Id.* at PageID 13-15.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Gwin filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Gwin's official-capacity claims against McWherter and the TBOP are construed as claims against the State of Tennessee itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71. In addition, "whereas *Ex Parte Young*, [209 U.S. 123, 159-60 (1908),] provides an exception to sovereign immunity when a party is seeking prospective relief

against a state official, the exception 'has no application in suits against States and their agencies, which are barred regardless of the relief sought." *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2019 WL 4593389, at *4 (S.D. Ohio Sept. 23, 2019) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)). Therefore, all of Gwin's claims against the TBOP are barred by the Eleventh Amendment.

The Supreme Court has clarified, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985), and *Ex Parte Young*). In addition to damages, Gwin seeks declaratory relief stating that McWherter violated Gwin's rights under the Eighth and Fourteenth Amendments. (ECF No. 1 at PageID 14.) However, that relief would be retroactive in nature. Gwin does not allege that the current governor of Tennessee is committing an ongoing violation of his rights[2] or seek prospective injunctive or declaratory relief against any specific state official. As such, the retroactive declaratory relief he seeks does not fall into the exception of *Ex Parte Young*, and Gwin is barred from seeking it in this action. *See Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003). Thus all of Gwin's claims against McWherter also are barred by the Eleventh Amendment's grant of sovereign immunity.

Even if Gwin's claims against McWherter were not barred by the Eleventh Amendment, they are barred by the one-year statute of limitations applicable to § 1983 claims. *See* Tenn. Code Ann. § 28-3-104(a)(1)(B). Though Gwin alleges the claims did not accrue until his rearrest on the parole violation in 2016, (ECF No. 1 at PageID 4), he clearly was aware, at least by January 10,

---

[2] Defendant McWherter died more than eight years ago, on April 4, 2011. *See* www.memphisdailynews.com/news/ 2011/apr/5/former-tenn-gov-ned-mcwherter-80-dies/.

5

1995, that McWherter had revoked his sentence commutation, that he had not received a probable-cause hearing and would not receive any credit for the years he had been released. (*See* ECF No. 1-1 at PageID 17.) Thus, the one-year limitations period expired more than twenty-two years before Gwin's claims against McWherter were filed on March 20, 2017.

For the foregoing reasons, Gwin's complaint is subject to dismissal in its entirety.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, the Court DISMISSES Gwin's claims for failure to state a claim and for seeking monetary relief from a Defendant that is immune to such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). Leave to amend is DENIED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Gwin in this case would be taken in good faith. The good faith standard is an objective one.

*Coppedge v. United States*, 369 U.S. 438, 445 (1962). It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Gwin nevertheless appeals the dismissal of this case.[3] A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)-(b). Therefore, Gauldin is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3] In dismissing the case from which the claims in this case were severed, the Court assessed a third strike against Gwin pursuant to 28 U.S.C. § 1915(g). *See* No. 17-2054-JDT-cgc, ECF No. 20 at PageID 190-91. Because the claims in this case originally were filed as part of 17-2054, the Court will not deny outright leave to appeal *in forma pauperis* on the basis of Gwin's current status as a "three-striker."